Slip Op. 17-61

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES, | |
| Plaintiff, | Before: Mark A. Barnett, Judge |
| v. | Court No. 15-00047 |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | **PUBLIC VERSION** |
| Defendant. | |

OPINION

[The court grants Plaintiff's motion for summary judgment, in part, and denies Defendant's motion for summary judgment.]

Dated:  May 18, 2017

<u>Monica P. Triana</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for plaintiff.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, and <u>Amy M. Rubin</u>, Assistant Director, International Trade Field Office.

<u>Barry M. Boren</u>, Law Offices of Barry Boren, of Miami, FL, and <u>Gerson M. Joseph</u>, Gerson M. Joseph, P.A., of Weston, FL, for defendant.

Barnett, Judge:  The United States of America ("United States" or "Plaintiff") sued

Great American Insurance Company of New York ("GAIC" or "Defendant") to recover

$50,000 in unpaid antidumping duties and interest, the limit on a continuous entry bond

that GAIC issued, plus pre- and post-judgment interest, including statutory interest

pursuant to 19 U.S.C. § 580 (2006)[1] and equitable interest.  *See generally* Compl., ECF

---

[1] All references to the United States Code are to the 2006 edition, as determined by the date of importation of the subject merchandise, unless otherwise stated.

No. 2.  Plaintiff and Defendant both filed motions for summary judgment; those motions are fully briefed.  *See* Confidential Pl.'s Mot. for Summ. J. and Pl.'s Mem. of Law in Supp. of its Mot. for Summ. J. ("PMSJ"), ECF No. 55; Great Am. Ins. Co. of New York's Mot. for Summ. J. and Supporting Mem. of Law, ECF No. 47; Mem. of Law in Supp. of the Def.'s, Great Am. Ins. Co. of New York, Mot. for Summ. J. ("DMSJ"), ECF No. 48. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1582.  For the reasons discussed below, the court grants Plaintiff's motion for summary judgment, in part, and denies Defendant's motion for summary judgment.

### STANDARD OF REVIEW

The court may grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on the materials in the record.  U.S. Court of International Trade ("USCIT") Rule 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When both parties move for summary judgment, the court generally must evaluate each party's motion on its own merits and draw all reasonable inferences against the party whose motion is under consideration.  *JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000).  Ultimately, the court's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  A dispute about a material fact is genuine when it "may reasonably be resolved in favor of either party."  *Id.* at 249-50 (to defeat summary judgment, the opponent must do more than present evidence that is "merely colorable" or "not significantly probative," rather, the opponent must present sufficient evidence on

a disputed factual issue tending to show that "a jury [could] return a verdict for that party").

USCIT Rule 54(b) governs the entry of partial summary judgment.  Rule 54(b) provides that "[w]hen an action presents more than one claim for relief, . . . the court may direct entry of a final judgment as to one or more but fewer than all claims . . . only if the court expressly determines that there is no just reason for delay."  USCIT Rule 54(b).

BACKGROUND

## I.    Material Facts Not Genuinely in Dispute

Pursuant to USCIT Rule 56(c)(1)(A), movants are to present material facts as short and concise statements, in numbered paragraphs, with citations to "particular parts of materials in the record" as support.  *See* USCIT Rule 56.3(a)("factual positions described in Rule 56(c)(1)(A) must be annexed to the motion in a separate, short and concise statement, in numbered paragraphs").  In responsive papers, the opponent "must include correspondingly numbered paragraphs responding to the numbered paragraphs in the statement of the movant."  USCIT Rule 56.3(b).  "If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  USCIT Rule 56(e)(2).

Parties submitted separate statements of undisputed material facts with their respective motions and responses to the opposing party's statements.  *See* Confidential

Pl.'s Statement of Undisputed Facts ("PSOF"), ECF No. 55;[2] Def., GAIC's, Objs. to the

Pl.'s Statement of Undisputed Facts ("Def.'s Resp. to PSOF"), ECF No. 52-2;

Uncontested Material Facts ("DSOF"), ECF No. 48 (pp. 11-12); Pl.'s Resp. to Def.'s

Statement of Undisputed Facts ("Pl.'s Resp. to DSOF"), ECF No. 61.  Upon review of

Parties' facts (and supporting documents), the court finds the following material facts not

genuinely disputed.[3]

### A.    Overview of the Bond and Entry at Issue

On July 29, 2003, GAIC issued a $50,000 continuous bond to secure the payment

of duties, taxes, and charges on merchandise imported by Orleans Furniture Inc.

("Orleans Furniture").  PSOF ¶ 1; Def.'s Resp. to PSOF.[4]  The bond had an effective

date of August 22, 2003, and a termination date of August 31, 2007.  PSOF ¶ 2; Def.'s

Resp. to PSOF.

On June 1, 2006, Orleans Furniture made one entry (Entry Number 322-

5581818-2) of parts of wooden bedroom furniture from the People's Republic of China.[5]

---

[2] Plaintiff submitted its statement of facts in a single electronic filing (ECF No. 55) along with its motion, memorandum of law, and confidential exhibits.  The statement of facts is located at pp. 52-59 of ECF No. 55.

[3] Citations are provided to the relevant paragraph number of the undisputed facts and response; internal citations generally have been omitted.  Citations to the record are provided when a fact, though not admitted by both Parties, is uncontroverted by record evidence.

[4] Defendant's response to Plaintiff's statement of facts only included paragraphs addressing its objections to Plaintiff's assertions; it did not include paragraphs admitting any of Plaintiff's assertions.  *See* Def.'s Resp. to PSOF.  Accordingly, the court cites to Defendant's response generally when recounting facts that Defendant did not dispute.

[5] Plaintiff asserts an entry date of June 5, 2006, and contends the entry consisted of "wooden bedroom furniture."  PSOF ¶ 2 (citing Compl., Confidential Ex. B ("Entry Summary"), ECF No. 4-1).  Defendant asserts an entry date of June 1, 2006.  DSOF ¶ 1

PSOF ¶ 2; Def.'s Resp. to PSOF; DSOF ¶ 1; PL.'S RESP. TO DSOF ¶ 1.[6]  On the Entry

Summary, Orleans Furniture identified the relevant antidumping duty ("AD") order and

exporter using Commerce case number "A-570-890-101."  PSOF ¶ 4; Def.'s Resp. to

PSOF.[7]  Commerce case number A-570-890-101 is associated with exporter Gaomi

Yatai Wooden Ware Co., Ltd. ("Gaomi Yatai").  PSOF ¶ 10.[8]  Commerce later

---

(citing Def. Ex. 1, ECF No. 48-1 (copy of the Entry Summary)).  Defendant does not object to Plaintiff's description of the subject merchandise in its response to Plaintiff's statement of facts, but elsewhere contends the subject merchandise consisted of parts, not finished bedroom furniture.  *See* DMSJ at 31-32.  Because Defendant's date corresponds to the date on the Entry Summary, *see* Entry Summary, the court relies on that date.  The court further notes that the Entry Summary describes the subject merchandise as "wooden parts of furniture."  *Id*.  The differences in dates and description of the merchandise, however, are not material to the court's resolution of the summary judgment motions.  Moreover, the court's description of the subject merchandise is not an indication of the court's position on whether the subject merchandise was within the scope of the relevant antidumping duty order.  *See infra* Background Sect. E (discussing Orleans Furniture's protest of the reliquidation on the basis that the subject merchandise was not covered by the relevant antidumping duty order and Customs' deemed denial thereof).  The time for seeking judicial review of the denied protest has long passed.  *See* 28 U.S.C. § 2636(a) (a civil action challenging the deemed denial of a protest must be filed within 180 days of the denial).

[6] The total entered value for the merchandise was [[       ]].  PSOF ¶ 3; Def.'s Resp. to PSOF.

[7] The first six digits (A-570-890) are specific to the AD order; the last three digits (101) are specific to a particular manufacturer/exporter.  PSOF ¶¶ 4, 9; Def.'s Resp. to PSOF.  Use of "000" as the last three digits of the case number indicates that the China-wide rate applies to the merchandise.  PSOF ¶ 8; Def.'s Resp. to PSOF.

[8] Defendant objects to this statement on the basis that "[n]owhere in any of the liquidation directives issued by Commerce does the case [number] A-570-890-101 appear[,] nor is it associated with [Gaomi Yatai] in the directives."  Def.'s Resp. to PSOF ¶ 10.  In fact, suspension of liquidation instructions issued by Commerce on February 24, 2009 (Message 9055211) specifically identify Gaomi Yatai with Commerce case number A-570-890-101.  PMSJ, Ex. 4 ("Feb. 24, 2009 Suspension Instructions") at CBP000014.  Because there is uncontroverted record evidence demonstrating that Commerce case number A-570-890-101 appears in Commerce's instruction to Customs and is associated with Gaomi Yatai, there is no genuine dispute as to that fact.  *See Anderson*, 477 U.S. at 249.

determined that the exporter was Company X.[9]  PSOF ¶12; Def.'s Resp. to PSOF.

Exports from Company X are subject to the China-wide rate.  PSOF ¶ 12; Def.'s Resp.

to PSOF.

### B.   Antidumping Duty Order and Administrative Review

On November 17, 2004, Commerce issued its final determination of sales at less

than fair value in the antidumping duty investigation of wooden bedroom furniture from

the People's Republic of China ("PRC" or "China").  DSOF ¶ 2; Pl.'s Resp. to DSOF ¶ 2;

*see also Wooden Bedroom Furniture From the People's Republic of China*, 69 Fed.

Reg. 67,313 (Dep't of Commerce Nov. 17, 2004) (final determination of sales at less

than fair value); *Wooden Bedroom Furniture From the People's Republic of China*, 70

Fed. Reg. 329 (Dep't of Commerce Jan. 4, 2005) (notice of am. final determination of

sales at less than fair value and antidumping duty order).[10]

On March 7, 2007, Commerce initiated an administrative review of wooden

bedroom furniture imported from China for the period of review ("POR") from January 1,

---

[9] Company X is identified as [[                                        ]]. PSOF ¶ 12; Def.'s Resp.
to PSOF.
[10] The scope of the order included "wooden bedroom furniture" that "is generally, but not
exclusively, designed, manufactured, and offered for sale in coordinated groups."
*Wooden Bedroom Furniture From the People's Republic of China*, 69 Fed. Reg. at
67,314.  Excluded from the scope are:

> unfinished furniture parts made of wood products . . . that are not
> otherwise specifically named in this scope (i.e., wooden headboards for
> beds, wooden footboards for beds, wooden side rails for beds, and
> wooden canopies for beds) and that do not possess the essential
> character of wooden bedroom furniture in an unassembled, incomplete, or
> unfinished form. Such parts are usually classified in subheading
> 9403.90.7000, HTSUS.

69 Fed. Reg. at 67,314 n.13.

2006 to December 31, 2006 (the "2006 POR").  PSOF ¶ 13; Def.'s Resp. to PSOF; *see*

*also Wooden Bedroom Furniture From the People's Republic of China*, 72 Fed. Reg.

10,159 (Dep't of Commerce March 7, 2007) (notice of initiation of admin. review of the

antidumping duty order).  The liquidation of entries subject to the review was suspended

pending completion of the review.  PSOF ¶ 13; Def.'s Resp. to PSOF; DSOF ¶ 3; Pl.'s

Resp. to DSOF ¶ 3.

On August 20, 2008, Commerce published the final results of its review.  PSOF

¶ 14; Def.'s Resp. to PSOF; *see also Wooden Bedroom Furniture From the People's*

*Republic of China*, 73 Fed. Reg. 49,162 (Dep't of Commerce Aug. 20, 2008) (final

results of antidumping duty admin. review and new shipper review; 2006); *Wooden*

*Bedroom Furniture From the People's Republic of China*, 74 Fed. Reg. 4,916 (Dep't of

Commerce Jan. 28, 2009) (am. final results of antidumping duty admin. review; 2006).

Publication of the final results lifted the suspension of liquidation for entries subject to

the review.  PSOF ¶ 15; Def.'s Resp. to PSOF.

On January 27, 2009, Commerce issued Message 9027213 instructing Customs

to assess antidumping duties at a rate of 216.01% to entries subject to the China-wide

rate and identified by Commerce case number A-570-890-000.  PSOF ¶ 16; Def.'s

Resp. to PSOF; *see also* PMSJ, Confidential Ex. 3 ("Jan. 27, 2009 Liquidation

Instructions").  For all other entries, Commerce ordered Customs to "continue to collect

cash deposits of estimated [AD] duties [for the merchandise] at the current cash deposit

rates."  PSOF ¶ 17; Def.'s Resp. to PSOF.

### C.      Court Proceedings Enjoining Liquidation

On February 13, 2009, the court issued a temporary restraining order ("TRO")

enjoining the liquidation of 2006 POR entries from several exporters, including Gaomi

Yatai.  PSOF ¶ 18 (citing *Am. Signature, Inc. v. United States,* Consol. Court No. 08-

00316, Order (Feb. 13, 2009) ("Am. Signature TRO"), ECF No. 64).  The court

subsequently issued a preliminary injunction in that case.  PSOF ¶ 18 (citing *Am.*

*Signature,* Consol. Court No. 08-00316, Order (Feb. 24, 2009) ("Am. Signature Prelim.

Inj."), ECF No. 70).  Pursuant to the TRO, Commerce issued Message 9055211

instructing Customs to suspend the liquidation of entries exported by Gaomi Yatai for

the 2006 POR and identified by Commerce case number A-570-890-101, and which

remained unliquidated as of February 19, 2009.  PSOF ¶ 19 (citing Feb. 24, 2009

Suspension Instructions).[11]  A Customs official subsequently entered a notation in

---

[11] Defendant objects to the facts asserted in paragraphs 18 and 19 of Plaintiff's
statement of facts on the basis that Commerce's liquidation instructions directed
Customs to suspend liquidation of entries exported by Gaomi Yatai *and* imported by [[
]].  Def.'s Resp. to PSOF ¶¶18-19.  Citing Commerce's *January 27, 2009* Liquidation
Instructions, Defendant contends the injunction at issue "only applied to {[[      ]]}
entries," and "[n]owhere does it say to suspend or liquidate entries with the number A-
570-890-101."  Def.'s Resp. to PSOF ¶¶ 18-19.
       Plaintiff, in fact, pointed to the TRO and preliminary injunction issued in *American*
*Signature* and to the customs message issued pursuant thereto.  PSOF ¶¶ 18-19.  Both
the TRO and the preliminary injunction refer to exports by Gaomi Yatai without any
limitation as to the importer.  *See* Am. Signature TRO; Am. Signature Prelim. Inj.;
Message 9055211 (issued pursuant to the TRO) is consistent with that.  Defendant's
response refers to Message 9027213 issued pursuant to the *Klaussner* case.  *See*
Def.'s Resp. to PSOF ¶¶ 18-19; *Klaussner Furniture Industries, Inc., et al. v. United*
*States, et al.,* Consol. Court No. 08-00323.  While Defendant correctly notes that the
injunction in that case is limited, in relevant part, to exports by Gaomi Yatai imported by
[[      ]], it does not detract from the breadth of the injunction in *American Signature*,

CBP's Automated Commercial Systems ("ACS") database stating that Entry Number

322-5518182 was "subject to [the] TRO dated 2/13/09 per CBP message 9055211,"

and that, therefore, the entry should not be liquidated "absent further instructions."

PSOF ¶ 20; Def.'s Resp. to PSOF; PMSJ, Ex. 5, ECF No. 60 (ACS entry notation).

Customs treated the entry as if it had been suspended.  PSOF ¶ 21; Def.'s Resp. to

PSOF.

When the court dismissed *American Signature* on May 18, 2009, the injunction

dissolved and the suspension of liquidation of entries of merchandise exported by

Gaomi Yatai associated with Commerce case number A-570-890-101 was lifted.  PSOF

¶ 22 (citing *Am. Signature*, Consol. Court No. 08-00316, Order (May 18, 2009), ECF No.

91); Def.'s Resp. to PSOF.

### D.    Liquidation of the Subject Entry

On June 23, 2009, Commerce issued Message 9174201 instructing Customs to

liquidate entries exported by Gaomi Yatai for the 2006 POR and assess an AD duty rate

of 32.23 percent.  PSOF ¶ 23 (citing PMSJ, Ex. 6 ("June 23, 2009 Liquidation

Instructions")); Def.'s Resp. to PSOF.  On September 30, 2009, John Gerace, a

Customs Supervisory Import Specialist, attempted to apply the June 23, 2009

Liquidation Instructions to the subject entry.  PSOF ¶ 24.  In so doing, he learned that

Orleans Furniture had used the wrong Commerce case number on the entry

---

nor does it create a genuine factual dispute.  *See Klaussner,* Consol. Court No. 08-
00323, Order (Dec. 8, 2008), ECF No. 40.

documents.  PSOF ¶ 24.[12]  Instead of Gaomi Yatai, the actual exporter was Company

X.  PSOF ¶ 12; Def.'s Resp. to PSOF.  "[Company X] was not entitled to a separate

---

[12] Defendant objects, asserting that "CBP learned of the error on June 23, 2009, not
September 30, 2009."  Def.'s Resp. to PSOF ¶ 24.  Defendant does not object to
Plaintiff's assertion that Mr. Gerace attempted to apply the June 23, 2009 Liquidation
Instructions to the subject entry, or that Mr. Gerace himself learned of the error on
September 30, 2009.  *See* Def.'s Resp. to PSOF ¶ 24.

 Contrary to USCIT Rule 56.3(c), which requires "each statement controverting
any statement of material fact" to be "followed by citation to [admissible] evidence,"
Defendant does not offer evidentiary support for his assertion that someone at CBP
(other than Mr. Gerace) learned of the error on June 23, 2009.  *See* Def.'s Resp. to
PSOF ¶ 24.  However, in its statement of undisputed facts, Defendant similarly asserts
that "[a]t least as early as June 23, 2009, CBP had already decided to rate advance this
entry."  DSOF ¶ 7 (citing DMSJ, Ex. 7 ("Sept. 30, 2009 ACS Entry Note")); *see also* Pl.'s
Resp. to DSOF ¶ 7 (objecting to the assertion).  That entry note states:

 AD CASE A570890101 WAS USED ERRONEOUSLY AT TIME OF
 ENTRY, <u>INCORRECT AD CASE NO. WAS DETECTED AT TIME OF LIQ.</u>
 <u>INSTRUCTIONS (MSG. 9174201, DATED 6/23/09)</u> CORRECT CASE
 FOUND TO BE A570890000, LIQ INSTRUCTIONS PER MSG 9027213,
 DATED 1/27/09.  DEEM LIQ BY OP LAW.

Sept. 30, 2009 ACS Entry Note (underline added); *see also* PSOF ¶ 31 (reproducing
the entry note); Def.'s Resp. to PSOF.  Thus, the basis for Defendant's objection is
language stating that the incorrect case number had been detected "at time of
[liquidation] instructions," and its interpretation of that language to mean that the error
had been detected when the June 23, 2009 Liquidation Instructions issued, not when
the instructions were applied.  *See* DSOF ¶ 7.

 It is undisputed that Mr. Gerace created the entry note on September 30, 2009
when he learned of the error.  *See* PSOF ¶ 30 (averring that "[c]ontemporaneous with
Mr. Gerace's finding [of the error, he] entered a note into ACS explaining what had
taken place"); Def.'s Resp. to PSOF ¶ 30 (averring that "*CBP discovered the error on
June 23, 2009 and not contemporaneously with *Mr. Gerace's findings*") (emphasis
added); *see also* Sept. 30, 2009 Entry Note (identifying "JGERACE" as the user
generating the entry); PMSJ, Confidential Ex. 1 (Declaration of John Gerace) ("Gerace
Decl.") ¶¶ 11, 15 (averring that on September 30, 2009, Mr. Gerace learned that
Orleans Furniture had used the wrong case number and subsequently created the entry
note).  Defendant's interpretation of the entry note language necessarily implies that Mr.
Gerace knew about an unidentified CBP official's prior knowledge and included it in the
entry note.  But Defendant offers no evidence supporting this interpretation, nor does it
offer evidence contradicting Mr. Gerace's sworn declaration.  Conjecture and
speculation about when a Customs official learned of the importer's error are insufficient

rate, and the correct associated case number was A-570-890-000, to which a

corresponding duty rate of 216.01 [percent] applied." PSOF ¶ 26; Def.'s Resp. to

PSOF. Accordingly, the suspension of liquidation of entries exported by Gaomi Yatai

identified in Commerce's February 24, 2009 Suspension Instructions did not apply to the

subject entry; instead, publication of the August 20, 2008 Final Results lifted the

suspension of liquidation of entries subject to the review, including the subject entry,

and the January 27, 2009 Liquidation Instructions directing Customs to apply a 216.01

percent AD duty rate to entries subject to the China-wide rate and identified by

Commerce case number A-570-890-000 applied. PSOF ¶¶ 27-28.[13]

---

to raise a genuine issue of material fact. *See Applikon Biotechnology, Inc. v. United
States*., 35 CIT ___, ___. 807 F. Supp. 2d 1323, 1325 n.2 (2011) (citing *Kulak v. City of
New York*, 88 F.3d 63, 71 (2d Cir.1996)). Instead, the opponent "must point to an
evidentiary conflict created on the record at least by a counter statement of a fact or
facts set forth in detail *in an affidavit by a knowledgeable affiant*." *Barmag Barmer
Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836 (Fed. Cir. 1984),
*quoted in Processed Plastics Co. v. United States*, 473 F.3d 1164, 1170 (Fed. Cir.
2006) (emphasis added). This, Defendant has not done. Accordingly, there is no
genuine dispute as to when Orleans Furniture's error was discovered. *See Anderson*,
477 U.S. at 249; USCIT Rule 56(e)(2).

[13] Defendant objects that the "[i]nstructions in [M]essage 9055211 [i.e., the February 24,
2009 Suspension Instructions] did apply because the importer was Orleans and not {[[
]]}." Def.'s Resp. to PSOF ¶¶ 27-28. The point of Defendant's statement is unclear.
The February 24, 2009 Suspension Instructions suspended entries exported by Gaomi
Yatai regardless of the identity of the importer. *See* Feb. 24, 2009 Suspension
Instructions at CBP000014. However, Parties agree that [[      ]] was the exporter, not
Gaomi Yatai, [[      ]] was subject to the China-wide rate, the correct Commerce case
number was A-570-890-000, suspension of liquidation for the subject entry lifted on
August 20, 2008, upon publication of the Final Results, and, pursuant to the January 27,
2009 Liquidation Instructions, Commerce ordered Customs to apply a 216.01 percent
AD duty rate to entries subject to the China-wide rate and identified by Commerce case
number A-570-890-000. PSOF ¶¶ 12, 16, 26; Def.'s Resp. to PSOF; DSOF ¶ 4; Pl.'s
Resp. to DSOF ¶ 4. Defendant's objection fails to raise a genuine issue of material fact.

By operation of law, on February 20, 2009, six months after suspension was

lifted, the subject entry liquidated (hereinafter referred to as the "deemed liquidation").

PSOF ¶ 29; Def.'s Resp. to PSOF; DSOF ¶ 5; Pl.'s Resp. to DSOF ¶ 5.  On December

18, 2009, "the 'no-change' liquidation became effective in ACS, and Customs posted a

bulletin notice of the deemed liquidation for the [subject entry] on the same date."

PSOF ¶ 33; Def.'s Resp. to PSOF; DSOF ¶ 8; Pl.'s Resp. to DSOF ¶ 8.[14]

On January 8, 2010, Customs reliquidated the entry at the correct AD rate of

216.01 percent.  PSOF ¶ 35; Def.'s Resp. to PSOF ¶ 35; PSOF ¶ 36.[15]

---

[14] Plaintiff asserts as an undisputed fact that, after Mr. Gerace's discovery of the incorrect case number, but before Customs posted the bulletin notice, "time was needed to process the Entry, verify the case and rate information, generate a Notice of Action (CF 29), forward the Notice of Action to the entry unit at Customs and allow time for processing."  PSOF ¶ 32 (citing Gerace Decl. ¶ 17).  Defendant objects that "CBP needed no time to verify any information . . . ."  Def.'s Resp. to PSOF ¶ 32.  Defendant, again, does not cite to admissible evidence supporting its assertion or countering Mr. Gerace's sworn declaration.  *See* Def.'s Resp. to PSOF ¶ 32; USCIT Rule 56.3(c). Instead, Defendant points to its "answer brief," i.e., its opposition to Plaintiff's summary judgment motion.  Def.'s Resp. to PSOF ¶ 32.  Therein, Defendant characterizes Plaintiff's assertion as "curious" and "stunningly unconvincing."  *See* Def. Resp. at 9. Defendant offers its "serious[] doubt" that the time taken by CBP to process the entry "is even close to the time it takes a customhouse broker to actually prepare the entry," which must be done within 15 days of arrival, Def. Resp. at 9, and asserts that the math required to calculate the correct AD duty "takes about two minutes" to complete, Def. Resp. at 10 (citing Def.'s Resp., Ex. 3 (Customs' Liquidation/Reliquidation Worksheet)). Crucially, however, Defendant offers no evidence contradicting Mr. Gerace's sworn declaration concerning the actions CBP performed before posting the bulleting notice, nor does it offer evidence supporting its objection that "no time" was needed by the agency to complete those actions before posting the Bulletin Notice.  *See* Def's Resp. to PSOF ¶ 32.  Defendant's speculative objection is insufficient to raise a genuine dispute. *See Applikon Biotechnology, Inc.*, 807 F. Supp. 2d at 1325; *Processed Plastics Co.*, 473 F.3d at 1170.

[15] Defendant objects to Plaintiff's assertion that the unpaid principal amounts to $60,336.14, and asserts that the unpaid principal is $[[        ]], but does not object to the fact of reliquidation or correctness of the AD rate. Def.'s Resp. to PSOF ¶ 35.  However,

### E.    Protest and Demand for Payment from Surety

On February 4, 2010, Orleans Furniture protested the reliquidation on the basis

that AD duties should not have been assessed because the subject merchandise was

only "posts" and not finished bedroom furniture.  PSOF ¶ 37; Def.'s Resp. to PSOF; *see*

*also* PMSJ, Ex. 10 (Protest Number 200610100128).  Orleans Furniture requested

"accelerated disposition" of the protest pursuant to 19 C.F.R. § 174.22, which was

subsequently deemed denied.  PSOF ¶ 38.[16]  GAIC did not protest the reliquidation,

and neither Orleans Furniture nor GAIC challenged the deemed denial.  PSOF ¶ 41;

Def.'s Resp. to PSOF.

On April 27, 2010, Customs sent GAIC a "Formal Demand on Surety for

Payment of Delinquent Amounts Due."[17]  PSOF ¶ 42 (citing Compl., Confidential Ex. C

---

Defendant does not dispute that "CBP re-liquidated the entry with an ADD rate advance
of $60,336.14."  DSOF ¶ 9; Pl.'s Resp. to DSOF ¶ 9.

[16] Defendant does not object to the assertion that Orleans Furniture requested
accelerated disposition, rather, that "[f]or the reasons stated in [its] Motion for Summary
Judgment, . . . the protest was not deemed denied."  Def.'s Resp. to PSOF ¶ 38.  It is
well settled that arguments by counsel cannot constitute facts for the purpose of
summary judgment.  *See, e.g.*, *Gaub v. Professional Hosp. Supply, Inc.*, 845 F. Supp.
2d 1118, 1128 (D. Idaho 2012); *Trinsey v. Pagliaro*, 229 F. Supp. 647, 649 (D.C. Pa.
1964) ("Statements of counsel in their briefs . . . are not sufficient for purposes of . . .
summary judgment").  Further, as discussed herein, the legal basis for Defendant's
assertion (which concerns whether Customs' deemed denial amounted to an *ultra vires*
ruling on the scope of the AD order) lacks merit.  *See infra* Discussion Sect. III (Status
of Administrative Proceedings).

[17] Defendant objects that the 612 Report "noted that there was an outstanding protest"
and "[was] not a demand on Surety."  Def.'s Resp. to PSOF ¶¶ 42-43.   Although
Defendant is correct the 612 Report listed Orleans Furniture's protest as "open," the 612
Report is plainly titled "Formal Demand on Surety for Payment of Delinquent Amounts
Due," and it cites the "APPROVAL/DENIAL DATE: 02/09/10" for the protest in question,
indicating that the deadline for ruling on the protest had passed.  *See* 612 Report.
Defendant offers no evidence supporting its assertion that the 612 Report, so titled, is

("612 Report")).[18]  GAIC did not protest Customs "charge[s] or exaction[s]."  PSOF ¶ 44;

Def.'s Resp. to PSOF.  On December 15, 2014, Customs sent GAIC a letter demanding

payment of $50,000 (the face value of the issued bond).  PSOF ¶ 45; Def.'s Resp. to

PSOF.

### F.    Procedural History

On February 19, 2015, the United States initiated this collection action against

GAIC for unpaid antidumping duties and interest.  *See generally* Compl.  Earlier in these

proceedings, GAIC moved to dismiss the complaint for failure to state a claim on the

grounds that Customs lacked authority to reliquidate an entry that had been deemed

liquidated and, alternatively, failed to timely reliquidate the entry.  *See generally* Great

American Ins. Co. of New York's Mot. to Dismiss and Supp. Mem. of Law ("Def.'s

MTD"), ECF No. 12.  The court denied the motion to dismiss, finding that Customs has

statutory authority to reliquidate deemed liquidations within 90 days of transmitting

notice of the deemed liquidation to importers pursuant to 19 U.S.C. § 1501,[19] and the

---

not a demand for payment from surety.  Accordingly, there is no genuine dispute as to
that fact.  *See Anderson*, 477 U.S. at 249-50; USCIT Rule 56(e)(2).
[18] According to the 612 Report, Customs sought payment of $60,336.14 in principal and
$398.02 in interest.  612 Report (line item for bill number 45462263).
[19] In full, § 1501 provides:

> A liquidation made in accordance with section 1500 or 1504 of this title or
> any reliquidation thereof made in accordance with this section may be
> reliquidated in any respect by the Customs Service, notwithstanding the
> filing of a protest, within ninety days from the date on which notice of the
> original liquidation is given or transmitted to the importer, his consignee or
> agent. Notice of such reliquidation shall be given or transmitted in the
> manner prescribed with respect to original liquidations under section
> 1500(e) of this title.

complaint adequately alleged facts showing that Customs had timely reliquidated the

subject entry within the 90 day period.  *See generally United States v. Great American*

*Ins. Co. of New York*, 39 CIT ___, 121 F. Supp. 3d 1288 (2015).  The court further

found that the ten month delay from the date of the deemed liquidation to the date on

which Customs posted notice was not, "as a matter of law," unreasonable.  *Id.* at 1295.

Pending are the Parties' motions for summary judgment.  Plaintiff moves for

summary judgment on the basis that the undisputed material facts establish that the

time between the deemed liquidation and the posting of the bulletin notice of the

deemed liquidation was reasonable.  *See generally* PMSJ.  Defendant raises several

grounds for summary judgment; central to its motion, however, is Defendant's

construction of the relevant statutory scheme as affording Customs 90 days (or

alternatively, 180 days) from the date on which entries are deemed liquidated to

voluntarily reliquidate those entries.  *See generally* DMSJ.  For the reasons discussed

below, the court grants Plaintiff's motion, in part, and denies Defendant's motion.

---

19 U.S.C. § 1501 (2006).  As discussed herein, in 2016 Congress amended § 1501 to
provide for reliquidation within 90 days from the date of the deemed liquidation only and
not from the date on which notice of the deemed liquidation is given or transmitted to
the importer.  However, that amendment does not apply here.  *See infra* Discussion
Sect. I.B.b.ii.

DISCUSSION

## I.   Defendant's Ability to Challenge the Reliquidation

Plaintiff asserts two bases for precluding Defendant from challenging the

reliquidation: failure to exhaust administrative remedies and the doctrine of law of the

case.  The court will address each, in turn.

### A.   Administrative Exhaustion

Plaintiff argues that, pursuant to 19 U.S.C. § 1514, Defendant is barred from

challenging the reliquidation because it failed to protest CBP's demand for payment (the

612 Report) or challenge the denial of Orleans Furniture's protest of the reliquidation.

PMSJ at 12-13; *see also* Confidential Pl.'s Reply Mem. of Law in Further Supp. of its

Mot. for Summ. J. ("Pl.'s Reply") at 14-18, ECF No. 57.  Defendant responds that the

finality provisions stated in § 1514 do not apply to reliquidations pursuant to 19 U.S.C.

§ 1501.  GAIC Mem. of Law in Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp.") at 13,

ECF No. 52.  Defendant broadly contends that it may raise any defense to the

government's enforcement action without having filed a protest, and, more specifically,

that CBP's reliquidation of an entry deemed liquidated did not have to be protested.  *Id.*

at 13-16.[20]

---

[20] Defendant also asserts that "[a]ny CBP decision on a protest would have been *ultra vires*," and the deemed liquidation was final and conclusive.  Def.'s Resp. at 14-15. Defendant does not explain why CBP's decision would have been *ultra vires*; presumably, however, the assertion relates to Defendant's separate argument that, in the event the court finds the reliquidation to be valid, it is entitled to summary judgment on the basis that Orleans Furniture's protest could not have been deemed denied because "any action (or non-action) by CBP on [Orleans Furniture's] protest was an *ultra vires* determination [by CBP on the scope of the AD order] and the issue is still

### a.  Legal Framework

Section 1514 governs the finality of CBP's decisions.  In relevant part, it provides that:

> (a) [e]xcept as provided in . . . section 1501 of this title (relating to voluntary reliquidations), . . . any clerical error, mistake of fact, or other inadvertence, . . . adverse to the importer, in any entry, liquidation, or reliquidation, and, *decisions of the Customs Service* . . . as to--
>
> . . .
>
> **(3)** *all charges* or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
>
> . . .
>
> **(5)** the liquidation *or reliquidation* of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;
>
> . . .
>
> shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade . . . .

19 U.S.C. § 1514(a) (emphasis added).  Either an importer or a surety may protest a decision specified in § 1514(a).  *See id.* § 1514(c)(2) (providing for protests by importers or their sureties); *id.* § 1514 (c)(1) (noting that "[o]nly one protest may be filed for each entry of merchandise," but that "separate protests filed by different authorized persons with respect to any one category of merchandise . . . are deemed to be part of a single protest").  Additionally, a surety has "180 days from the date of mailing of notice of

---

pending."  DMSJ at 33. As discussed herein, Defendant's argument lacks merit.  *See infra* Discussion Sect. III.

demand for payment against its bond" to protest a claim against its bond.  *Id.*

§ 1514(c)(3).

It is well settled that Customs' findings related to a particular liquidation "merge

with the liquidation" and are final and conclusive unless challenged in accordance with

§ 1514.  *Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370 (Fed. Cir.

2008); *see United States. v. Am. Home Assur. Co*. ("*AHAC (09-403)*"), 39 CIT ___, ___,

100 F. Supp. 3d 1364, 1369 (2015).[21]  Unprotested issues related to the liquidation of

the subject entries may not be "raised in any context," *United States v. Cherry Hill*

*Textiles, Inc*., 112 F.3d 1550, 1557 (Fed. Cir.1997); that is, the rule of finality "applies to

both importer duty recovery suits and to [g]overnment enforcement actions," *AHAC (09-*

*403)*, 100 F.Supp.3d at 1369.

### b.  Analysis

#### i.  Section 1514 Applies to Reliquidations

Defendant contends that § 1514 does not apply to reliquidations pursuant to 19

U.S.C. § 1501.  Def.'s Resp. at 13.[22]  In support, Defendant points to the first sentence

---

[21] Because there are several cases involving American Home Assurance Company, for ease of identification subsequent case citations include the USCIT Court No.

[22] Defendant also contends that § 1514(a) only applies to "'any clerical error, mistake of fact, or other inadvertence,'" but does not apply to mistakes of law."  Def.'s Resp. at 13. Defendants confuses the operative language.  The "final and conclusive" language stated in § 1514(a) applies to both "any clerical error, mistake of fact, or other inadvertence . . . adverse to the importer, in any entry, liquidation, or reliquidation," *and* to "decisions of the Customs Service, . . . as to . . . the liquidation or reliquidation of an entry."  § 1514(a); *see also* Pl.'s Reply at 13.

of 19 U.S.C. § 1514, which governs the finality of Customs' decisions as to liquidations

and reliquidations "[e]xcept as provided in . . . section 1501 . . . ."  *See id.* at 13.

Defendant misreads the significance of the cited sentence.  "Absent clear

legislative intent to the contrary, the plain meaning of [a] statute will prevail."  *Lynteq,*

*Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir.1992) (citation omitted).  Pursuant to

§ 1514, "absent timely reliquidation or protest," a liquidation is final and conclusive.

*Volkswagen*, 532 F.3d at 1370 (citation omitted); 19 U.S.C. § 1514.  Section 1501

provides for voluntary reliquidation by CBP of entries affirmatively liquidated pursuant to

§ 1500 or deemed liquidated pursuant to § 1504.  *See* 19 U.S.C. § 1501.  Thus, in the

event CBP reliquidates an entry pursuant to § 1501, the reliquidation--not the original

liquidation--becomes "final and conclusive."  *See id.* § 1514(a)(5)(governing the finality

of reliquidations).  Thus, Defendant's argument, which essentially precludes

reliquidations pursuant to § 1501 from ever becoming "final and conclusive," lacks merit.

### ii.  Defendant is Foreclosed From Challenging Matters Subsumed by the Reliquidation

Defendant also contends that it may raise any defenses to liability in this

enforcement action notwithstanding its failure to protest the reliquidation that formed the

basis for the charge.  Def.'s Resp. at 13-17.  Defendant is incorrect.

As an initial matter, the 612 Report that Customs sent to GAIC on April 27, 2010

detailing the importer's delinquent amounts due constitutes a protestable "decision[]" as

to a "charge[]" for purposes of § 1514(a)(3).[23]  The basis for Customs' issuance of the

612 Report involved its substantive determinations regarding the subject entry's

eligibility for reliquidation and the "applicable rate of duty."  *See U.S. Shoe Corp.*, 114

F.3d at 1569.  Customs then had to identify the relevant bonds, determine whether the

duties owed exceeded the face value of the bonds, determine any applicable rate of

interest,[24] and issue the demand for payment from the surety.  *Cf.  AHAC (09-403)*, 100

F. Supp. 3d at 1370-71 (Customs decision to seek post-liquidation § 1505(d) interest

from the surety constituted a protestable charge; surety's failure to seek judicial review

of denied protests barred it from asserting defenses to § 1505(d) liability).  That demand

for payment "identif[ied] the name and address of the delinquent importer, the bill

number, billing date, port of entry, document date, entry number, the amount due, and

the importer number."  *Peerless Ins. Co. v. United States*, 12 CIT 1231, 1232-33, 703 F.

Supp. 104, 105 (1988) (noting that, "since 1977, Customs has issued its payment

demand to sureties containing such information); 612 Report.  The court has found that

---

[23] A "decision" is a "substantive determination[] involving the application of pertinent law and precedent to a set of facts, such as tariff classification and applicable rate of duty." *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997) (passive receipt of a harbor maintenance tax by Customs constitutes a "charge or exaction," but not a "decision" pursuant to § 1514(a)).  A "charge" is "an obligation or duty; a claim or encumbrance; a liability, an expense or the price of an object; an entry in an account of what's due from one party to another." *St. Paul Fire and Marine Ins. Co. v. United States*, 14 CIT 43, 46, 729 F. Supp. 1371, 1374 (1990) (citations omitted), *rev'd on other grounds*, 959 F.2d 960 (Fed. Cir. 1992).

[24] Pursuant to 19 U.S.C. § 1677g, the government is entitled to collect interest on underpayment of amounts deposited on merchandise entered on or after the date on which an antidumping order issues.  The government is also entitled to so-called "delinquency interest" pursuant to 19 U.S.C. § 1505(d).  *See AHAC (09-403)*, 100 F. Supp. 3d at 1368-71.

a 612 Report constitutes a protestable "charge" pursuant to § 1514(a)(3).  *See Hartford*

*Fire Ins. Co. v. United States*, 31 CIT 1281, 1286, 507 F. Supp. 2d 1331, 1335–36

(2007), *aff'd*, 544 F.3d 1289 (Fed. Cir. 2008); *Hartford Fire Ins. Co. v. United States*,

Court No. 07-00101, Def.'s Mot. to Dismiss, Ex. A, ECF No. 13 (appending a "Formal

Demand on Surety for Payment of Delinquent Amounts Due," i.e., a 612 Report, as

evidence of the charge at issue).  Accordingly, Customs' issuance of the 612 Report

triggered a 180 day period during which GAIC could have protested the underlying

reliquidation giving rise to the charge.  *See* 19 U.S.C. §§ 1514(a)(3), (c)(3)(B); *see also*

*Pope Prods., Div. of Purex v. United States*, 15 CIT 279, 283 (1991) (demand for

payment begins the timeframe during which a surety may protest a liquidation).

        To support the proposition that it "did not have to file a protest in order to raise

*any and all* defenses available to it in this collection action," Defendant first relies on

*United States v. Am. Home Assurance Co.* ("*AHAC (09-401)*"), 39 CIT ___, ___,151 F.

Supp. 3d 1328, 1347-48 (2015).  Def.'s Resp. at 14 (emphasis added).  However,

Defendant misreads *AHAC (09-401)*.  There, the court distinguished "protestable

matters" related to the entries from "defenses related to [a surety's] contractual

obligations," for the purpose of determining whether the surety's defenses were

preserved.  *AHAC (09-401)*, 151 F. Supp. 3d at 1347.  To be sure, a surety is not barred

from raising contractual defenses in an enforcement action.  *St. Paul Fire & Marine Ins.*

*Co. v. United States*, 959 F.2d 960, 963–64 (Fed. Cir.1992); *AHAC (09-401)*, 151 F.

Supp. 3d at 1347.  Here, however, Defendant's arguments are not "personal" to the

surety's obligations pursuant to the bond; rather, they concern Customs' authority to

reliquidate the subject entry beyond a specified timeframe.  *See* DMSJ*; cf. AHAC 09-401*, 151 F. Supp. 3d at 1346-48 (surety was not barred from arguing that it was prejudiced by its failure to receive notice of the lifting of suspension); *St. Paul Fire*, 959 F.2d at 963–64 (surety's claim that the government knew, but failed to timely disclose, its awareness that the importer was evading customs laws, was "personal" to the surety and "separate and distinct" from the importer's protest).  Defendant's arguments against liability constitute the type of "collateral[] challenge" to the validity of the reliquidation the Federal Circuit has cautioned the exhaustion requirement of § 1514 was designed to prevent.  *See Cherry Hill*, 112 F.3d at 1557 (permitting sureties to "collaterally challenge the liquidation" in a subsequent enforcement action "would create a gaping hole in the administrative exhaustion requirement of section 1514 and would be inconsistent with the underlying policy of section 1514, which is to channel challenges to liquidations through the protest mechanism in the first instance"); *cf. United States v. Utex Int'l Inc.*, 857 F.2d 1408, 1414 (Fed. Cir. 1988) (permitting surety to defend against the government's demand for liquidated damages, occurring four years after final liquidation, because the issue did not involve administrative review of the liquidation); *Cherry Hill*, 112 F.3d at 1555 (construing *Utex Int'l* to be consistent with barring challenges to the accuracy or validity of a liquidation when those challenges were not protested administratively).

Defendant relies on *Cherry Hill* to support its alternative argument that it did not have to file a protest raising a "deemed liquidation defense" to raise that same defense in a subsequent enforcement action.  Def.'s Resp. at 15-16 (citing *Cherry Hill*, 112 F.3d

at 1550); *see also Cherry Hill*, 112 F.3d at 1558 (referring to the "deemed liquidation"

defense as a "narrower ground for reversal" than the argument that § 1514 exhaustion

was only required in the case of importer recovery suits and not government

enforcement actions). *Cherry Hill* held that because the subject "entry was liquidated by

operation of law prior to the October 28, 1988, liquidation, [the surety] was not required

to protest the October 28 liquidation in order to be entitled to defend against liability on

the ground of the deemed liquidation." 112 F.3d at 1560. The Federal Circuit created

this exception to the protest requirement to prevent CBP from "purport[ing] to liquidate

an entry anew, years after the first liquidation had become final, and thereby impos[ing]

liability on the importer or surety if the importer or surety were not vigilant in watching for

notice of such untimely liquidations or if it were no longer able to undertake the burden

of filing and pursuing a protest." *Id.*; *see also United States v. Am. Home Assur. Co*.

("*AHAC (Fed. Cir.)*"), 789 F.3d 1313, 1321-22 (Fed. Cir. 2015) (discussing *Cherry Hill*).

Defendant's reliance on *Cherry Hill* is misplaced.

First, *Cherry Hill* interpreted an older version of § 1501, which did not provide

for reliquidation of entries deemed liquidated pursuant to § 1504(d).[25]  *See Norsk Hydro*

*Can., Inc. v. United States*, 472 F.3d 1347, 1362 n.26 (Fed. Cir. 2006). Accordingly, the

Federal Circuit reasoned that the deemed liquidation, and not the subsequent

---

[25] 19 U.S.C. § 1501 was amended in 2004 to allow for reliquidation of entries initially
liquidated pursuant to § 1504, *i.e.* deemed liquidations.  *See* Miscellaneous Trade and
Technical Corrections Act of 2004, Pub. L. No. 108-429, §§ 2107, 2108, 118 Stat. 2434,
2598 (2004).  Prior to 2004, only entries liquidated pursuant to §1500 could be
reliquidated by Customs.

liquidation, "must [] be regarded as final" because the government had failed to

demonstrate grounds for treating the subsequent liquidation as a reliquidation and could

not simply liquidate the entry anew.  *See Cherry Hill*, 112 F.3d at 1560 (noting, *inter alia*,

that "reliquidation under 19 U.S.C. § 1501 would not be permitted because that

provision applies only to liquidations made in accordance with 19 U.S.C. § 1500, and

not to 'deemed liquidations' under 19 U.S.C. § 1504").  That reasoning, and, thus,

Defendant's reliance on *Cherry Hill* is inapposite in light of the changes to § 1501

affording Customs the authority to reliquidate deemed liquidations made pursuant to

§ 1504.  *See Norsk Hydro*, 472 F.3d at 1362 n.26 (recognizing that "deemed

liquidations are subject to reliquidation").

Defendant argues, however, that post-2004 cases "continue to recognize the

validity of *Cherry Hills'* [sic] holding on [this] point."  Def.'s Resp. at 15 (citing *Int'l*

*Custom Prod., Inc. v. United States*, 791 F.3d 1329, 1339-40 (Fed. Cir. 2015), *AHAC*

*(Fed. Cir.)*, 789 F.3d at 1322, and *Ford Motor Co. v. United States*, 35 CIT ___, ___,

806 F. Supp. 2d 1328, 1335 (2011)).  The dates of the opinions are irrelevant; each

case involves pre-December 3, 2004 entries of merchandise, did not address the

relevant statutory scheme, or is otherwise inapposite.[26]  Accordingly, Defendant's

reliance on these cases is misplaced.

---

[26] *Int'l Custom Products* addressed the applicability of the deemed liquidation defense to
Customs' purported liquidation in 2007 of 13 entries that had entered between October
2003 and October 2004.  *Int'l Custom Prod.*, 791 F.3d at 1333-34.  The Federal Circuit
relied on *Cherry Hill* to find that the importer could defend against a purported untimely
liquidation in an enforcement action without first having to file a protest.  *Id.* at 1340-41
(citing *Cherry Hill*, 112 F.3d at 1561).  In *AHAC (Fed. Cir.)*, the court rejected the

Second, Defendant has not actually raised the "deemed liquidation defense" to

liability contemplated in *Cherry Hill*.  Defendant interprets the "deemed liquidation

defense" to mean that a surety does not have to file a protest whenever the original

liquidation was by operation of law, but that stretches the defense too far.  *See* Def.'s

Resp. at 15-17.  As discussed above, *Cherry Hill* permitted a surety to raise the defense

that the subject entry had already deemed liquidated, without first filing a protest, when

Customs purported to liquidate (*as opposed to reliquidate*) the entry anew, and treat

that liquidation as the operative liquidation.  *See Cherry* Hill, 112 F.3d at 1560.  But that

is not what happened here, nor is the mere fact that the entries had deemed liquidated

prior to the reliquidation the basis of Defendant's defense to liability.  *See* DMSJ

(generally contending that Customs *waited too long* before conducting its statutorily

---

surety's attempt to assert a deemed liquidated defense pursuant to *Cherry Hill* to
several 2001 entries that Customs timely liquidated in 2004 and subsequently
reliquidated in 2005, because the entries had not been deemed liquidated.  789 F.3d at
1315-33.  *Ford Motor Co.* addressed pre-December 3, 2004 drawback entries that
"Customs had not affirmatively liquidated when the action commenced on September 2,
2009."  *Ford Motor Co.*, 806 F. Supp. 2d at 1331.  In determining whether the court had
jurisdiction to hear the case, the court relied on *Cherry Hill* for the proposition, made in
passing, that "the importer [could] wait for Customs to affirmatively liquidate, decline to
pay whatever amount it is billed, and then assert an affirmative defense of deemed
liquidation if the United States brings an enforcement action under 28 U.S.C. § 1582."
*Id.* at 1335 (citing, *inter alia*, *Cherry Hill*, 112 F.3d at 1560).  Additionally, when, as in
that case, Customs had not affirmatively liquidated the entries, "the importer [could]
bring an action under 28 U.S.C. § 1581(i) to obtain a declaratory judgment from the CIT
confirming that there was a deemed liquidation."  *Id.* at 1335 (internal quotation marks
and citations omitted); *id.* at 1337 (noting that "Plaintiff's allegations also suggest [the
same] 'potential for abuse' [that concerned the *Cherry Hill* court] that only a declaratory
judgment could prevent").  Neither *Int'l Custom Products*, *AHAC (Fed. Cir.)*, nor *Ford
Motor Co.* relied on *Cherry Hill* to permit the assertion of a deemed liquidation defense
to challenge a statutorily authorized reliquidation of post-December 3, 2004 entries.

authorized reliquidation of the subject entry that were previously deemed liquidated).

Thus, *Cherry Hill* does not resolve Defendant's arguments.  In sum, Defendant's

challenges to liability involve matters that are subsumed by the reliquidation and, thus,

could and should have been raised administratively.  Because they were not, Defendant

is foreclosed from raising those arguments in this action.

### B.     Law of the Case

Plaintiff argues that the court's prior interpretation of the relevant statutory

scheme constitutes the law of the case and, thus, Defendant's contrary arguments

should not be revisited.  Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp.")

at 4-6, ECF No. 61; Pl.'s Reply at 2.[27]  Defendant contends that a 2016 amendment to

19 U.S.C. § 1501 merits the court's reconsideration of its arguments.  GAIC Reply in

Supp. of Def.'s, GAIC, Mot. for Summ. J. ("Def.'s Reply") at 1-2, ECF No. 58.

### a.  Legal Framework

The law of the case doctrine "generally bars retrial of issues that were previously

resolved."  *Intergraph Corp. v. Intel Corp.,* 253 F.3d 695, 697 (Fed. Cir. 2001) (citing

*Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (law of the case "expresses the

practice of courts generally to refuse to reopen what has been decided")).  The

doctrine's purpose is to "promote[ ] the finality and efficiency of the judicial process by

protecting against the agitation of settled issues."  *Christianson v. Colt Indus. Operating*

---

[27] The electronic docket numbers for Plaintiff's response and reply are not sequential
due to Plaintiff's refiling of its response as a public document.  *See* Order (Feb. 21,
2017), ECF No. 59 (granting Plaintiff's motion for errata to replace certain docket
entries).

*Corp.,* 486 U.S. 800, 816 (1988) (citation and internal quotation marks omitted).

However, it is well settled that the application of the doctrine is within a court's

discretion, and it "should not be applied woodenly in a way inconsistent with substantial

justice." *Hudson v. Principi,* 260 F.3d 1357, 1363–64 (Fed. Cir. 2001) (citations omitted).

Courts may decline to apply the doctrine upon "the discovery of new and different

material evidence that was not presented in the prior action" or "an intervening change

of controlling legal authority," or when "the prior decision is clearly incorrect and its

preservation would work a manifest injustice." *Intergraph Corp*., 253 F.3d at 698.

### b.  Analysis

Defendant contends that an amendment to § 1501 that took effect on February

24, 2016 applies to entries that entered before that date, or, alternatively, that the

amendment constitutes a change in the controlling law meriting reconsideration of

Defendant's prior argument that Congress intended to limit CBP's ability to reliquidate

entries previously deemed liquidated to within 90 days of the date of the deemed

liquidation.  Def.'s Reply at 2.  In other words, Defendant contends that the 2016

amendment supports its interpretation of the 2004 version of § 1501 in effect when the

subject entries were made.  *See id.*  Defendant is wrong on both counts.[28]

---

[28] As previously noted, 19 U.S.C. § 1501 was amended in 2004 to allow for reliquidation of deemed liquidations.  *See supra* note 25.  Because the events of this case all took place after 2004, it is the 2004 version of the statute that governs Customs ability to liquidate and reliquidate the entries in question.

### i.  Overview of the 2016 Amendment

On February 24, 2016, Congress amended § 1501 as follows:

> A liquidation made in accordance with section 1500 or 1504 of this title or any reliquidation thereof made in accordance with this section may be re-liquidated in any respect by ~~the Customs Service~~ <u>U.S. Customs and Border Protection</u>, notwithstanding the filing of a protest, within ninety days from the date ~~on which notice of the original liquidation is given or transmitted to the importer, his consignee or agent~~ <u>of the original liquidation</u>.  Notice of such reliquidation shall be given or transmitted in the manner prescribed with respect to original liquidations under section 1500(e) of this title.

Trade Facilitation and Enforcement Act of 2015, Pub. L. No. 114-125, § 911, 130 Stat. 122, 240 (2016) (deletions in strikethrough; additions underlined).  In sum, the statute now requires Customs to voluntarily reliquidate affirmative and deemed liquidations within 90 days from the date of the liquidation, not the date on which notice is provided. *See id.*

### ii.  The Amendment is Not Retroactive

The U.S. Supreme Court has recognized that "the presumption against retroactive legislation is deeply rooted in our jurisprudence," because "individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . . ." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).  However, this presumption is not absolute: "[r]etroactivity provisions often serve entirely benign and legitimate purposes," including correcting mistakes.  *Id.* at 267-68.  Accordingly, the Court has established a framework to determine whether a statute applies retroactively. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) ("This Court has worked out a sequence of analysis when an objection is made to applying a particular statute

said to affect a vested right or to impose some burden on the basis of an act or event preceding the statute's enactment.").

First, a court must look to "whether Congress has expressly prescribed the statute's proper reach." *Id.* at 37 (citing *Landgraf*, 511 U.S. at 280). Absent such language, a court should "try to draw a comparably firm conclusion about the temporal reach specifically intended by applying '[the court's] normal rules of construction.'" *Id.* (citing *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)). If both efforts fail, a court asks whether the statute has impermissible "retroactive consequence," defined as an application of the statute that "'affect[s] substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment.'" *Id.* (citing *Landgraf*, 511 U.S. at 278).[29] To determine whether a statute has retroactive consequence, the court must consider three *Landgraf* factors: "the 'nature and extent of the change of the law,' 'the degree of connection between the operation of the new rule and a relevant past event,' and 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1364 (Fed. Cir. 2005) (quoting *Landgraf*, 511 U.S. at 270).[30]

---

[29] There is a distinction between "retroactive consequence," which is impermissible, and applying a statute "retroactively," which may be permissible. *See Landgraf*, 511 U.S. at 269-70 ("The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.").

[30] Neither party has addressed the *Landgraf* factors the court is required to consider pursuant to *Princess Cruises*; instead, Parties dispute the proper application of *Landgraf* as construed by the Court of Appeals for the Ninth Circuit in *Chenault v. U.S. Postal Service*, 37 F. 3d 535, 538 (9th Cir. 1994). *See* DMSJ at 19; Pl.'s Resp. at 21-22; Def.'s

In this case, § 1501 (as amended in 2016) does not expressly state the statute's

temporal applicability.  *See* 19 U.S.C. § 1501 (2016).  Nor do the "normal rules of

[statutory] construction" suggest a "comparably firm" determination "about the [statute's]

temporal reach."  *Fernandez-Vargas*, 548 U.S at 37 (citing *Lindh*, 521 U.S. at 326).

Defendant relies on legislative history associated with the 2016 amendment to support

retroactivity.  Def.'s Reply at 5 (quoting 162 Cong. Rec. S836-02 (daily ed. Feb. 11,

2016) (statements of Senators Hatch and Wyden)); *see also* DMSJ at 17 n.5.  In the

floor debate relied on by Defendant, Senators Hatch and Wyden had the following

exchange:

> Mr. HATCH:
> Madam President, the bill we will be voting on shortly contains a provision
> amending 19 U.S.C. § 1501, which relates to the liquidation of entries into
> the U.S.  The provision in the conference report amending section 1501 is
> *intended to ensure* in cases where liquidation occurs by operation of law,
> the 90-day timeframe for the voluntary reliquidation of an entry by
> Customs and Border Protection begins on the date of the original
> liquidation.  I would ask my colleague, Senator Wyden, the ranking
> member of the Finance Committee, if that is his understanding of this
> provision as well.
>
> Mr. WYDEN:
> Madam President, I agree with Senator Hatch that is the intent of the
> provision amending 19 U.S.C. § 1501.

162 Cong. Rec. S836-02 (daily ed. Feb. 11, 2016) (statements of Senators Hatch and

Wyden) (emphasis added).  According to Defendant, Senator Hatch's use of the

phrasing "intended to ensure" was "obviously meant to clarify that Congress intended

---

Reply at 5.  However, the Federal Circuit, not the Ninth Circuit, is binding on the court
and the court applies the legal framework as stated in *Princess Cruises*.

the 90-day timeframe in the 2004 amendment to also begin on the date of the original

liquidation."  Def.'s Reply at 5 (underline omitted).  To the contrary, Senator Hatch's

statement simply discusses the effect of the 2016 amendment; it falls far short of a

"comparably firm" statement of the amended statute's temporal reach.  *See Fernandez-*

*Vargas*, 538 U.S. at 37; Pl.'s Resp. at 20 ("Plainly, the Congressmen were discussing

the intent of the amendment that result[ed] in the current statute, not the intent of the

prior version.").  Accordingly, the court must proceed to the third step of the analysis—

consideration of the *Landgraf* factors.

First, the "nature and extent of the change of the law" is significant because the

amendment changes the starting point for computing the time that CBP has to

voluntarily reliquidate an entry from the date of notice to the date of the liquidation.  *See*

*Princess Cruises*, 397 F.3d at 1364.  Particularly in the context of deemed liquidations,

this is significant because those two dates do not necessarily (or even likely) coincide.

*See* 19 C.F.R. § 159.9(c)(ii) (affording Customs "a reasonable period after each

liquidation by operation of law" to provide notice); *cf. Koyo Corp. of U.S.A. v. United*

*States*, 497 F.3d 1231, 1240 (Fed. Cir. 2007) (recounting Customs' posting of bulletin

notices more than 12 months after the subject entries had been deemed liquidated).

Second, there is a strong "degree of connection between operation of the new

rule and a relevant past event."  *See Princess Cruises*, 397 F.3d at 1364.  Applying the

2016 amendment to the reliquidation at issue here, which occurred within 90 days of

notice but not within 90 days of the deemed liquidation, would void the reliquidation and

result in the under-collection of antidumping duties.  *See supra* Background Sect. I.D;

*cf. Princess Cruises*, 397 F.3d at 1366 (noting that retroactive application of the rule in question would result in plaintiff being overcharged).

Finally, "familiar considerations of fair notice, reasonable reliance, and settled expectations" also disfavor retroactive application.  *See Princess Cruises*, 397 F.3d at 1366-67.[31]  As the Federal Circuit recognized more than a decade ago, § 1501 plainly afforded Customs 90 days from the date on which it posted the bulletin notice to reliquidate the subject entry.  *See Norsk Hydro*, 472 F.3d at 1352.  To now hold otherwise implicates fairness and reliance considerations.  *Cf. Princess Cruises*, 397 F.3d at 1364, 1366 (receipt of a letter from a Customs official indicating that Plaintiff would not be subject to harbor maintenance tax for layover-only passengers disfavored retroactive application of a contrary Customs ruling).  In sum, because all three *Landgraf* factors points to an impermissible retroactive effect, CBP's "substantive rights, liabilities, or duties" would be negatively affected by applying the 2016 amendments to the facts of this case.  *See Fernandez-Vargas*, 548 U.S at 37; *Princess Cruises*, 397 F.3d at 1367.  Thus, the court must "apply the presumption against retroactivity . . . owing to the absen[ce of] a clear indication from Congress that it intended such a result."  *Fernandez-Vargas*, 548 U.S. at 37–38 (internal quotation marks and citation omitted).

---

[31] The Federal Circuit declined to resolve the issue of the relative weight to be given to this factor because all three *Landgraf* factors pointed to the same conclusion.  *Princess Cruises*, 397 F.3d at 1366.  The court also need not resolve the issue of weight because the factors also point to the same conclusion.

As to Defendant's alternative argument--that the amendment supports its interpretation of § 1501 circa 2004--in fact, the opposite is true. *See* Def.'s Reply at 2. Congress' amendment to the statute demonstrates that starting the period for reliquidation at the notice of the deemed liquidation is substantively different from starting it at the date on which the entry liquidated by operation of law, otherwise there would be no reason to amend the statute.  Absent evidence that Congress intended the 2016 amendment to § 1501 to apply retroactively, the court is guided by the plain language of the statute in effect when the subject entries were made.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citations omitted).  Defendant already has raised, and the court has rejected, the argument that the timeframe for voluntary reliquidation begins on the date of the deemed liquidation.  *See* Def.'s MTD; *Great American Ins. Co. of New York*, 121 F. Supp. 3d at 1295 ("[T]he statute is clear that it is the date the notice was transmitted that starts the clock on reliquidation and Customs has 90 days from the date the notice of deemed liquidation is transmitted to reliquidate the entry.") (citing *Norsk Hydro*, 472 F.3d at 1352 ("Customs may *sua sponte* reliquidate an entry, including an entry 'deemed liquidated,' within 90 days of its giving notice of the original liquidation to the importer.")).  For that reason, the court declines to reconsider Defendant's arguments regarding statutory interpretation.  The issue that remained unresolved at the motion to dismiss stage, and to which the court now turns, is whether Customs posted the bulletin notice "within a reasonable period."  *See* 19 C.F.R. § 159.9(c)(ii).

## II.   Whether Customs Posted the Bulletin Notice Within a Reasonable Time

Plaintiff moves for summary judgment on the grounds that the ten month period

between the date of the deemed liquidation and the date on which it posted the bulletin

notice is reasonable, particularly in light of Orleans Furniture's misidentification of the

applicable Commerce case number on the Entry Summary.  *See* PMSJ at 9-12.

Defendant responds that 90 days from the date of the deemed liquidation constitutes

"[a] reasonable time" within which CBP must post a bulletin notice, Def.'s Resp. at 10,

and, further, that the ten month delay at issue in this case is unreasonable, *see id.* at 7-

10.[32]

### A.  Legal Framework

As noted above, § 1501 provides that Customs may reliquidate a deemed

liquidation "within ninety days from the date on which notice of the original liquidation is

given or transmitted to the importer."  19 U.S.C. § 1501.  Although Congress predicated

reliquidation on Customs' provision of notice of the deemed liquidation, Congress has

---

[32] Defendant also argues that the reasonableness of the time period must be measured from June 23, 2009, when it contends Customs learned of the importer's error.  Def.'s Resp. at 8.  As discussed *supra* note 12, Defendant's contention is speculative. Defendant appears to confuse the issue left open after the court denied its motion to dismiss as whether "Customs reliquidate[d] within a reasonable period," which is distinct from whether Customs posted the bulletin notice within a reasonable period.  *See* DMSJ at 26-28.  Defendant contends that if the court does not find 90 days to constitute a reasonable period, it should find that a reasonable period cannot, as a matter of law, exceed six months from the date of the deemed liquidation.  *See id.* at 26-28. Reasonableness, however, is fact specific; thus, it would be improper for the court to read into the governing regulation an arbitrary bright-line temporal rule.  Moreover, Defendant's argument is simply another variation of its core argument that the date of the deemed liquidation triggers the time in which CBP may reliquidate the subject entry, which the court has rejected.

not, however, mandated that Customs must, in all cases, provide notice of the deemed

liquidation.  *See id.* § 1504(a)(1) ("Notwithstanding section 1500(e) of this title, notice of

liquidation need not be given of an entry deemed liquidated."); *see also id.* § 1500(e)

(instructing Customs "to give or transmit" notice of liquidation "in such form and manner

as the Secretary shall by regulation prescribe").  Consequently, there is a gap in the

statutory scheme because it provides for reliquidation within 90 days of notice that may,

or may not, be given.  Customs' regulations fill that gap by requiring the posting of a

bulletin notice to provide notice of entries liquidated by operation of law.  *See* 19 C.F.R.

§ 159.11 ("Notice of liquidation *will be given* on a bulletin notice of liquidation . . . as

provided in §§ 159.9 and 159.10(c)(3).") (emphasis added);[33] *see also Contreras v.*

*United States*, 215 F.3d 1267, 1274 (Fed. Cir. 2000) ("An agency that has been granted

authority to promulgate regulations necessary to the administration of a program it

oversees may fill gaps in the statutory scheme left by Congress if it does so in a manner

that is consistent with the policies reflected in the statutory program."); *New England*

*Tank Industries of New Hampshire, Inc. v. United States*, 861 F.2d 685, 694 (Fed. Cir.

1988) (referring to the term "will" as it appears in an agency regulation as a "mandatory

term") (citations omitted).  Customs must post the bulletin notice of liquidation in the

---

[33] Strictly speaking, the text of 19 C.F.R. § 159.11 applies to entries that are liquidated by operation of law because they are not liquidated within one year from the date of entry; the regulation does not refer to entries that CBP has failed to liquidate within six months of receiving notice that a statutory or court-ordered suspension has been removed.  *See* 19 C.F.R § 159.11.  However, pursuant to 19 U.S.C. § 1504, entries within that latter category are treated the same as entries within the former category; i.e., they are deemed liquidated.  *See* 19 U.S.C. § 1504(a),(d).  Accordingly, 19 C.F.R. § 159.11, which governs deemed liquidations, applies.

customhouse "within a reasonable period after each liquidation by operation of law and

[it] shall be dated as of the date of expiration of the statutory period."  19 C.F.R.

§ 159.9(c)(2)(ii).

### B.  Analysis

Parties agree that Customs reliquidated the entry on January 8, 2010, within 90

days of Customs' December 18, 2009 posting of the bulletin notice.  *See* PSOF ¶ 33;

Def.'s Resp. to PSOF; DSOF ¶¶ 8-9; Pl.'s Resp. to DSOF ¶¶ 8-9.  Thus, the remaining

issue is whether Customs posted the bulletin notice "within a reasonable period" after

the subject entry was deemed liquidated on February 20, 2009.

Here, Customs' delay in posting the bulletin notice is largely attributable to the

importer's erroneous identification on the Entry Summary of the Gaomi Yatai-specific

Commerce case number, A-570-890-101, which led Customs to treat it as if liquidation

had been suspended pursuant to the TRO and preliminary injunction issued in

*American Signature.  See supra* Background Sect. A-C.  It was not until September 30,

2009 that a Customs official, Mr. Gerace, learned that the exporter was Company X, not

Gaomi Yatai, that Company X was subject to the China-wide rate, that publication of the

August 20, 2008 Final Results had lifted the suspension of liquidation of the subject

entry, and that the subject entry had therefore liquidated by operation of law on

February 20, 2009.  *See supra* Background Sect. D.  This September 30 discovery

prompted Customs to process the entry and post the bulletin notice two and a half

months later, on December 18, 2009.  *See id.*[34]

Defendant seeks to apply *Utex Int'l* to support its contention that "it does not

matter if a mistake was made or who made the mistake, once an entry is liquidated and

not reliquidated within 90 days, it is final and conclusive to everyone[,] including the

government."  Def.'s Resp. at 7-8 (citing *Utex Int'l*, 857 F.2d at 1408).  The Federal

Circuit decided *Utex Int'l* before the 2004 amendments to § 1500 providing for voluntary

reliquidation of deemed liquidations.  *See supra* note 25.  Further, as Plaintiff

recognizes, *Utex Int'l* "simply identifie[s] the well-established principle that 'the statutory

procedures of liquidation, reliquidation, and timely protest control the finality of the

importation process,'" and that "'absent timely reliquidation or protest,'" liquidation is

final and conclusive.  Pl.'s Resp. at 7 (quoting *Utex Int'l*, 857 F.2d at 1411, 1412).  *Utex*

*Int'l* does not speak to the reasonableness of the timeframe within which Customs must

post a bulletin notice; thus, it does not support Defendant's position.

Defendant also contends that focusing on the importer's error "is nothing more

than a *post-hoc* attempt to justify CBP['s] own negligence" because the Entry Summary

otherwise identifies Company X by name and manufacturer identification number.

Def.'s Resp. at 11.  "At best, . . . the documents submitted by the importer . . . were

internally inconsistent."  Pl.'s Reply at 9.  However, Defendant does not dispute the

---

[34] Defendant attempts to dispute the reasonableness of the time CBP needed to
process the entry by comparing it to the 15 days afforded to a customs broker to
prepare entry paperwork.  Def.'s Resp. at 9 & n.4 (citing 19 C.F.R. § 141.5).
Defendant's attempt to compare apples and oranges fails to persuade.

importer's error or otherwise offer evidence demonstrating that CBP knew the identity of

the exporter before September 30, 2009.  *See supra* note 12.  Further, the importer is

responsible for using "reasonable care" when "complet[ing] the entry" so that Customs

may "properly assess duties," and must certify that the information is "true and correct."

19 U.S.C. § 1484(a)(1)(B), (d)(1).  In sum, although case law is scant on what

constitutes reasonableness for purposes of 19 C.F.R. § 159.9(c)(2)(ii), reasonableness

is an inherently fact-specific inquiry.  Based on the foregoing facts, the court finds that

Customs posted the bulletin notice "within a reasonable period."  *Cf. Koyo Corp.*, 497

F.3d at 1238 (quoting 19 C.F.R. § 159.9(c)(2)(i)-(ii)).

## III.    Status of Administrative Proceedings

Defendant argues that "[i]f, and only if, the [c]ourt finds the CBP reliquidation was

valid, then we submit that the case has not been decided administratively."  DMSJ at

31.  Defendant appears to contend that because Orleans Furniture's protest concerned

the scope of the relevant AD order, Customs should have referred the matter to

Commerce for a scope determination; because it did not, the issue remains unresolved,

"any action (or non-action) by CBP on the protest was an *ultra vires* determination," and

the protest could not have been deemed denied.  *Id.* at 31-34; *see also id.* at 33 ("There

cannot be a deemed denial of an accelerated disposition for an issue CBP had no legal

right to determine.").  Plaintiff contends the administrative proceedings are complete.

Pl.'s Resp. at 15-18.

### A.  Legal Framework

In antidumping administrative proceedings, scope issues may be resolved in one of two ways.  First, an "interested party" may seek a ruling from Commerce clarifying "whether a particular product is within the scope of an [antidumping duty] order."  19 C.F.R. § 351.225(c)(1); *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599–600 (Fed. Cir. 1998) (reviewing Commerce's "detailed scope determination procedures").[35] Such scope rulings are subject to judicial review by this court.  *See* 19 U.S.C. § 1516a(a)(2)(B)(vi).  Alternatively, when the scope of an order is clear, an importer may protest Customs' determination that a product is within the scope of the order pursuant to 19 U.S.C. § 1514(a)(2), and subsequently challenge any protest denial before this court.  *See Xerox Corp. v. United States*, 289 F.3d 792, 794-95 (Fed. Cir. 2002) (holding that an importer need not have sought a scope ruling from Commerce when "the scope of the order [was] not in question" because the importer had asserted that the subject merchandise was "facially outside the scope of the [order]"; distinguishing *Sandvik Steel* in which "importers should have sought scope rulings from Commerce . . . because . . . it was unclear whether the goods at issue were within the scope of [the] orders"); *cf. Sunpreme Inc. v. United States*, 40 CIT ___, ___,145 F. Supp. 3d 1271, 1285 (2016) (CBP "acts beyond its authority" when it "attempts to determine whether a product falls within the scope based upon factual information that the scope language does not explicitly call on CBP to consider.").

---

[35] Commerce may also self-initiate an inquiry into whether a product is within the scope of an order.  19 C.F.R. § 351.225(b).

### B. Analysis

Defendant contends that Customs should have obtained a scope ruling from

Commerce because it was unclear "whether . . . the items were within the scope of the

[AD] order." *See* DMSJ at 32.  Defendant asserts that, "[i]n the protest, [Orleans

Furniture] reminded CBP that the [subject] merchandise . . . [constituted] posts and not

finished bedroom furniture."  *Id.*; *see also* Def.'s Reply at 9 (the importer's protest "put

CBP on notice that [the importer] was contesting the fact that the merchandise . . . was

not covered by the [AD order]").[36]

Here, Orleans Furniture timely protested Customs' reliquidation and therein

requested accelerated disposition.  *See* PSOF ¶ 37; Def.'s Resp. to PSOF.  Pursuant to

§ 1515(b), "a protest which has not been allowed or denied in whole or in part within

thirty days following the date of mailing by certified or registered mail of a request for

accelerated disposition shall be deemed denied."  19 U.S.C. § 1515(b); *see also* 19

C.F.R. § 174.22(d) (governing deemed denials of protests for which accelerated

disposition had been sought).  The Parties agree that Orleans Furniture requested

---

[36] Defendant relies on *Sunpreme* to support its argument that Commerce, not CBP, is
responsible for making scope determinations.  See DMSJ at 32-34; Def.'s Reply at 10.
Defendant's reliance is misplaced.  As noted above, in *Sunpreme*, the court found that
CBP "acts beyond its authority" when it "attempts to determine whether a product falls
within the scope based upon factual information that the scope language does not
explicitly call on CBP to consider."  145 F. Supp. 3d at 1285.  That case, however, arose
as a result of Customs' affirmative determination that the scope of the relevant order
covered the subject merchandise, and the court relied on its residual jurisdiction,
pursuant to 28 U.S.C. § 1581(i), to review plaintiff's challenge to CBP's decision that the
subject merchandise was within the scope of the relevant order and, consequently, to
suspend liquidation and collect cash deposits on the entries.  *See id.* at 1280-82, 1283-
92.

accelerated disposition; absent evidence that Customs otherwise "allowed or denied [the protest] in whole or in part," there is no genuine dispute that Orleans Furniture's protest was deemed denied and the administrative proceedings are, thus, complete. *See* PSOF ¶ 38; Def.'s Resp. to PSOF ¶ 38; *Anderson*, 477 U.S. at 249.  Whether Customs properly applied the terms of the scope of the AD order to include Orleans Furniture's merchandise is no longer reviewable.  That decision was made in the context of the reliquidation.  Defendant's time to challenge that decision, through protest and, if necessary, challenge to the denial of the protest, has passed.  As discussed above, *supra* Discussion Sect. I.A.b.ii, issues that were subsumed in the liquidation/reliquidation are final and cannot be raised as a defense in this collection action.

Based on the foregoing, the reliquidation and associated charges are "final and conclusive."  Therefore, Defendant is liable to the Plaintiff for the $50,000 face value of the bond.

## IV.    Plaintiff's Entitlement to Interest

Plaintiff seeks statutory interest pursuant to 19 U.S.C. § 580 and equitable interest.  *See* PMSJ at 13-14; Compl.¶ 1.  According to Plaintiff, statutory and equitable interest should be calculated on the face value of the bond because the total amount of antidumping duties, pre-liquidation interest, and delinquency interest due exceeds the bond's value.  *See* Pl.'s Reply at 21.  Plaintiff asserts, however, that the issue of equitable interest should be held in abeyance pending the Federal Circuit's determination whether the government is entitled to equitable and statutory interest.

*See* PMSJ at 13-14 (citing *AHAC (09-403)*, 100 F. Supp. 3d at 1373 (declining to award

equitable interest in light of the government's entitlement to § 580 interest), *appeal*

*docketed*, Nos. 16-1088, 16-1090 (Fed. Cir. Oct. 20, 2015);[37] *United States v. Am.*

*Home Assur. Co.* ("*AHAC (10-185)*"), 39 CIT ___, ___, 102 F. Supp. 3d 1376, 1380

(2015) (same), *appeal docketed*, No. 16-1258 (Fed. Cir. Nov. 30, 2015));[38] Pl.'s Reply

at 20.  Defendant does not dispute Plaintiff's entitlement to statutory interest.  *See* Def.'s

Resp. at 17-20.  Defendant contends that Plaintiff is not entitled to equitable interest,

and the court should adjust any award of statutory interest by a "negative 'equitable pre-

judgment interest'" amount.  *Id.* at 19.  Defendant further contends that interest should

be calculated on the amount of antidumping duties due,[39] not the $50,000 face value of

the bond, and that interest began to accrue on December 15, 2014.  *Id.* at 18, 20.[40]

### A.  Statutory Interest

The government is entitled to collect statutory interest "at the rate of [six] per

centum a year," 19 U.S.C. § 580, on all "bonds securing the payment of antidumping

duties when the government sues for payment under those bonds," *AHAC (Fed. Cir.)*,

---

[37] The Federal Circuit heard oral argument on this appeal on February 9, 2017.  *See*
*AHAC (09-403)*, No. 16-1088, Docket Entries 63, 66.
[38] The Federal Circuit heard oral argument on this appeal on April 7, 2017.  *See AHAC*
*(10-185)*, No. 16-1258, Docket Entries 60, 63.
[39] This amount is [[          ]].  Def.'s Resp. at 20; Pl.'s Reply at 21.
[40] Defendant also contends that "interest starts to run from the time Commerce issues
its scope determination" regarding whether the subject entries are covered by the
relevant AD order.  Def.'s Resp. at 18.  As discussed *supra* Discussion Sect. III,
Defendant's scope-related arguments lack merit.

789 F.3d at 1325.  Interest is calculated "from the time when said bonds became due."

19 U.S.C. § 580.

Here, the "bonds became due" on April 27, 2010, the date Customs issued to

Defendant the 612 Report.  *See* 612 Report (titled "Formal Demand on Surety for

Payment of Delinquent Amounts Due"); 19 U.S.C. § 580.  Thus, interest began to

accrue on that date, and runs until the court issues judgment on liability.  *See AHAC*

*(10-185)*, 102 F. Supp. 3d at 1379 (§ 580 interest accrues from the date Customs first

demanded payment until the date of the court's judgment on liability).

Defendant's contention that interest should instead accrue from December 15,

2014, the date on which Customs sent it a demand letter, and not the earlier date on

which Customs issued the 612 Report because the 612 Report noted there was an

open protest, is unavailing.  A surety's "payment obligation runs independently of the

protest proceedings."  *United States v. Ataka America, Inc*., 17 CIT 598, 607, 826 F.

Supp. 495, 503 (1993) (regardless of whether "protest proceedings are pending," a

surety "owes the duties and in the absence of other defenses, breaches its bond if it

does not pay in accordance with its obligation").  Moreover, as noted above, *supra* note

17, the 612 Report recognized that the deadline for ruling on the protest had passed.

*See* 612 Report.

Defendant's contention that interest accrues on the amount of antidumping duties

owed, and not the face value of the bond, also lacks merit.  Pursuant to 19 U.S.C.

§ 1677g,[41] the government is entitled to collect interest on underpayment of amounts deposited on merchandise entered on or after the date on which an antidumping order issues.  Thus, § 1677g interest accrues on the difference between the cash deposit paid by Orleans Furniture[42] and the liquidated amount.[43]  The government is also entitled to delinquency interest pursuant to 19 U.S.C. § 1505(d).[44]  Because the sum total of the principal, § 1677g interest, and § 1505(d) interest exceeds the face value of the bond, *see* PSOF ¶ 43; Def.'s Resp. to PSOF; 612 Report, § 580 interest is calculated on the face value of the bond.  Interest therefore ran on a liability amount of $50,000 from April 27, 2010 to the judgment date at a rate of six percent per annum.

### B.  Equitable Interest

Having found that the government is entitled to § 580 interest, as Plaintiff has proposed, the court will defer its consideration of the appropriateness of an award of equitable prejudgment interest, pending the Federal Circuit's determination whether the government is entitled to both.  *See supra* Discussion Sect. IV.  Deferring consideration

---

[41] Section 1677g provides, *inter alia*, that "[i]nterest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after . . . the date of publication of a countervailing or antidumping duty order."  19 U.S.C. § 1677g(a).  The rate of interest is calculated pursuant to 26 U.S.C. § 6621.  19 U.S.C. § 1677g(b).  Pursuant to § 6621, the "underpayment rate" is "the sum of . . . the Federal short-term rate determined under subsection (b) [of § 6621], plus . . . 3 percentage points."  26 U.S.C. § 6621(a)(2).
[42] This amount is $[[      ]].  PMSJ, Ex. 9.
[43] This amount is $[[      ]].  PMSJ, Ex. 9.
[44] Pursuant to § 1505(d), delinquent "duties, fees, and interest . . . bear interest by 30-day periods, at a rate determined by the Secretary, from the date of liquidation or reliquidation until the full balance is paid."  19 U.S.C. § 1505(d).  When the 612 Report issued, delinquency interest in the amount of $398.02 had accrued.  *See* 612 Report; Pl.'s Reply at 21.

of this issue will not expose Defendant to additional interest because interest stops

accruing on the date the court enters judgment on liability.  *Cf. AHAC (10-185)*, 102 F.

Supp. 3d at 1379 n.2 (rejecting the government's argument that interest accrues until

the court enters judgment following remand from the Federal Circuit).[45]  And, as

discussed below, the court finds it appropriate to enter partial summary judgment

pursuant to USCIT Rule 54(b).

### C.  Partial Summary Judgment

The court has determined that Plaintiff is entitled to recover $50,000 in unpaid

antidumping duties and interest, which is the face value of the bond that GAIC issued,

plus statutory prejudgment interest.  Nevertheless, Plaintiff proposes that the court

defers reaching the issue of its entitlement to equitable prejudgment interest.  *See*

PMSJ at 13-14.  Deferring the equitable interest issue without entering judgment as to

liability, however, could prejudice the Defendant by permitting additional interest to

accrue while the Federal Circuit resolves the issue in the two cases pending before it.

Accordingly, the court will treat Plaintiff's request for equitable prejudgment interest as a

claim for relief that is separate from its claim for the value of the bond and statutory

interest, thereby enabling the court to enter partial summary judgment pursuant to

USCIT Rule 54(b).

---

[45] The court need not reach Defendant's argument that the court should adjust any
award of statutory interest by a "negative 'equitable pre-judgment interest'" amount.
Def.'s Resp. at 19.  In the event the Federal Circuit permits the award of equitable
interest in addition to the statutory interest awarded herein, Defendant is free to raise
any arguments it wishes regarding the possibility of overcompensation.

As previously stated, Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . ., the court may direct entry of a final judgment as to one or more but fewer than all claims . . . only if the court expressly determines that there is no just reason for delay."  USCIT Rule 54(b).  "Rule 54(b) requires finality—'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *United States v. Horizon Prods. Int'l, Inc.*, 39 CIT ___, ___, 91 F. Supp. 3d 1339, 1340 (2015) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). To determine whether there is no just reason for delay, the court examines whether the concern for avoiding piecemeal litigation is outweighed by considerations favoring immediate entry of judgment.  *See id.* (citing *Timken v. Regan*, 5 CIT 4, 6 (1983)).

Here, the United States seeks to recover the face value of the bond, statutory prejudgment interest pursuant to 19 U.S.C. § 580, and equitable prejudgment interest. The court has determined that Plaintiff is entitled to the face value of the bond and statutory interest.  There is nothing more for the court to decide in connection with those claims; thus, the court has reached an "ultimate disposition" as to those claims. Moreover, resolution of those claims do not bear on the court's resolution of Plaintiff's claim to equitable prejudgment interest.

The entry of a Rule 54(b) judgment on Defendant's liability and an award of statutory interest while deferring the issue of equitable interest serves the interests of both parties and the administration of justice because it tolls the accrual of prejudgment interest and prevents an extraneous appeal of an issue the Federal Circuit is already deciding.  To the extent partial summary judgment gives rise to piecemeal litigation, i.e.,

an appeal of these decided issues while the issue of equitable interest remains

unresolved, that concern is outweighed by the interest in tolling the accrual of

prejudgment interest, which favors the immediate entry of judgment.  *See Horizon*

*Prods. Int'l*, 91 F. Supp. 3d at 1340-41 (fixing the amount of prejudgment interest favors

the entry of final judgment).  Accordingly, the court finds that there is no just reason for

delay and will enter partial summary judgment pursuant to USCIT Rule 54(b).[46]

### CONCLUSION

For the reasons discussed above, the court will grant Plaintiff's motion for

summary judgment, in part, and deny Defendant's motion for summary judgment.

Judgment will be entered accordingly.


/s/      Mark A. Barnett
Mark A. Barnett, Judge


Dated: May 18, 2017
          New York, New York

---

[46] Entering judgment will, however, permit the accrual of statutory post-judgment interest.  *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); Compl. ¶ 1 (seeking post-judgment interest).